28004. MOOG *v.* HIRSCH, executrix.

DECIDED MARCH 15, 1940. REHEARING DENIED MARCH 26, 1940.

*Evins, Quillian & Evins,* for plaintiff in error.
*Joseph J. Fine,* contra.

STEPHENS, P. J. Mrs. Tillie Hirsch, as executrix of J. N. Hirsch and trading as "J. N. Hirsch," brought suit against Henry B. Moog to recover $93.75. The plaintiff alleged that she is a jobber engaged in the sale of matches, cigarettes, etc.; that on April 4, 1937, the defendant entered into a contract with the Diamond Match Company which contract was entered into by the company for and on behalf of the plaintiff, and was accepted by her; that this contract was for the purchase of ten cases of matches at $93.75, that the contract, which was in the form of an order and

signed by the defendant, provided that four cases of the matches were to be shipped "at once," three cases "8-1-1937," and three cases "12-1-37," and also provided that "this order is not subject to countermand after approved by jobber;" that in accordance with the order a first delivery of the matches was made to the defendant on or about June 8, 1937, which shipment was refused by the defendant; that the defendant notified the Diamond Match Company and the plaintiff "of his intention to repudiate and breach said contract, and also of his intention not to accept the first delivery or any other delivery thereafter;" that under the Code, § 96-113, the Diamond Match Company, acting for and on behalf of the plaintiff, notified the defendant by registered mail that it was treating the defendant's refusal to accept the first shipment as an anticipatory breach of the entire contract, and that the entire order and lot of matches were being held subject to the call of the defendant, and if they were not taken up and accepted within ten days suit for the entire purchase-price would be brought; that the plaintiff must pay the Diamond Match Company for the order of the defendant, the plaintiff having accepted and confirmed the order; and that the matches are now being stored and retained subject to the order of the defendant, and the plaintiff is now suing for the entire purchase-price of the contract.

The defendant denied liability, and alleged that the matches were not delivered in accordance with the contract, and that the delivery on June 14 was not accepted but was returned by him to the factory of the Diamond Match Company; that on June 7, 1937, more than seven weeks after the execution of the contract, during which time no delivery of matches under the contract had been made, the defendant notified the Diamond Match Company and its local agent, Freedman, that the order and contract were canceled because of the failure to deliver the matches in accordance with the terms of the contract, but under the terms of the contract the first shipment of matches was to be delivered "at once;" that the salesman and agent of the Diamond Match Company stated to the defendant when the contract was executed that the first shipment would be made within three weeks, and in no event later than four weeks, and that the defendant has not breached the contract, but the cancellation of the contract was made by him in good faith and in order to protect his interest. The case proceeded to trial before

one of the judges of the civil court of Fulton County without a jury.

E. L. Freedman testified for the plaintiff, that he was employed by the plaintiff as a salesman, and as such secured an order from the defendant on April 22, 1937, for the purchase of ten cases of matches from the Diamond Match Company at a price of $9.37½ per case, making a total of $93.75; that the delivery of these matches was to be made as follows: four cases at once, three cases August 1, 1937, and three cases December 1, 1937; that he submitted to the defendant on May 1, 1937, proof of the sketch of the design to be placed on the cover of each book of the matches, which he approved; that the witness did not recall stating to the defendant at the time the order was obtained that delivery would be made in three or four weeks. Harold D. Hirsch, credit manager of the plaintiff, testified for the plaintiff that the defendant is indebted to the plaintiff in sum sued for, representing the purchase-price of ten cases of book matches ordered from the Diamond Match Company through plaintiff as jobber, and that demand for payment had been made but payment had not been received.

The defendant testified, that he placed an order for book matches with the Diamond Match Company through its salesman, Freedman, on April 22, 1937; that he approved the sketch of the design for the cover of the book of matches on May 1, 1937; that he canceled the order on June 7, 1937, writing to this effect to the Diamond Match Company; that he canceled the order because delivery had not been made in accordance with the order and the agreement of the salesman, at the time, that delivery would be made in three weeks, and certainly not later than four weeks from the date of the order; that he did this because the salesman had definitely promised him delivery in three or four weeks, in that the matches were needed and ordered for a special event, a sales convention on June 1, 1937; that the sales book of the salesman stated that matches of this special design would be delivered in three or four weeks; that the order recited that the first shipment would be made "at once," and he had ordered the matches for use at the convention; that when the matches had not arrived by June 7, he canceled the order; and that after the cancellation the first shipment of matches was delivered to his office on June 14, 1937, but that he returned them on the same day to the Diamond Match Company,

Springfield, Mass., from which point they had been shipped. He further testified, that on April 22, 1937, he got in touch with the Diamond Match Company who sent its salesman, Freedman, to see him; that he explained to Freedman his predicament and stated that he did not wish to place an order unless delivery could be made at a very early date, certainly before June 1, at which time a convention was to take place, and that Freedman emphatically assured the defendant of delivery of the four cases in three to four weeks.

R. L. Freedman testified for the plaintiff, in rebuttal, that at the time of the placing of the order he did not tell the defendant that delivery of the four cases of matches would be made in three to four weeks; that the order recited that the first shipment was to be made "at once," and that he understood that to mean "at an early date."

The following were introduced in evidence: (1) The order for the ten cases of book matches, which was signed by the defendant on April 22, 1937, and which order provided that four cases of matches were to be shipped "at once," and that "this order is not subject to cancellation after approved by jobber." No approval of this order appears thereon, but the petition stated that the plaintiff had accepted and confirmed it. However, the evidence in behalf of the plaintiff was silent as to this. (2) A letter dated June 7, 1937, canceling the order of April 22, 1937, as follows: "On April 20, I gave an order for some book matches to your salesman, Mr. Freedman. I explained to him the rush nature of my requirement and he assured me the matches would be delivered within four weeks from date of order, in fact, he stated that they might even arrive in three weeks and substantiated his statements by showing me instructions along this line from his sales book. The sketch which was to arrive within a week from the order was late, but was approved by me and handed to Mr. Freedman on May 1. It has now been seven weeks since I gave the above mentioned order and my need for the matches has passed and I have had to make other arrangements. Please consider this letter as definite and final cancellation of the order as I will not accept the matches at this late date." This letter was addressed to the Diamond Match Company, L. & N. Terminals, Atlanta, Georgia, and was signed by the defendant. (3) The reply of the match company, dated Atlanta,

414

Georgia, June 8, 1937: "This will acknowledge your favor of the 7th regarding your order for 10 cases of book matches given our Mr. E. L. Freedman. You can appreciate the fact that this is a special design work and takes quite a bit of time to make up the books and effect delivery. Furthermore, it will be impossible for you to give some other party an order at this time and expect delivery before our books reach you. Our art department has gone to considerable expense in preparing this proof and this order was taken and accepted in good faith, and naturally we must expect that you carry out your part of the agreement, namely, your promise to accept the book matches upon arrival. We are writing our book match department to rush you your first order for 4 cases." (4) A reply of the book match department of the Diamond Match Company to that company's Atlanta office, dated June 11: "Your letter of the 8th inst. received regarding the 25,000 order which you received from J. N. Hirsch, Atlanta, for H. B. Moog. We are pleased to advise that 4 cases of 10,000 of these were shipped from Springfield on June 8th, and we trust this party accepts this delivery as well as the balance 15,000 that we have on hand at Springfield, as you will note this was a special design for which we were obliged to enter manufacturing order at factory and they printed the entire 25,000 order at once." This letter has thereon, "Stamped: Received June 14, 1937, 8:15." (5) A memorandum together with the sketch of the special design on the book matches ordered by the defendant, which showed the signature of H. B. Moog approving the sketch under date of May 1, 1937, and contained the further words, "Rush 4 cases. Will expect matches to be exactly as sketch."

The judge found in favor of the plaintiff the full amount sued for. The defendant moved for a new trial, and from the judgment overruling his motion he appealed. In addition to the general grounds, the motion contained the following: (1) "Because the evidence conclusively shows that the defendant canceled the order given to plaintiff for cause, and was legally entitled to reject attempted delivery of the merchandise, and is not indebted to plaintiff for the purchase-price thereof." (2) "Because the evidence conclusively shows that plaintiff breached its agreement with defendant by failing to tender delivery of said merchandise, which was to be delivered ' at once,' until June 14, 1937, almost seven weeks after said order was given and entirely too late for the

special event which event furnished the main reason for defendant ordering said matches, all of which was known to plaintiff." (3) "Because the undisputed evidence shows the construction which plaintiff placed upon the term 'at once' was three to four weeks, and so set out in the sales manual exhibited by plaintiff's salesman to defendant at the time said order was given." (4) "Because, as movant contends, the court erred in awarding judgment for plaintiff when judgment should have been rendered in favor of the defendant." The appellate division affirmed the order denying a new trial and the defendant excepted.

The order given by the defendant for the purchase from the Diamond Match Company, through the plaintiff jobber, of ten cases of book matches, with a special design to be printed on the cover thereof, provided that four cases of the matches were to be delivered "at once." It appeared that the books of matches were to be used by the defendant for advertising purposes, and were to have printed on the cover thereof a special design, showing the name of the defendant, with his business address, and the name of the firm he was representing. While the plaintiff's salesman, Freedman, testified that he did not state to the defendant that the matches would be delivered in from three to four weeks, but testified that the order recited that the first shipment was to be made "at once" and that he understood that to mean at an early date, the salesman did not deny that the defendant, when giving the order, stated to him that he did not wish to place the order unless delivery could be made at a very early date, certainly before June 1, at which time a convention was to take place. Therefore it appears conclusively without dispute that the contract between the parties was that the first shipment of the matches was to be delivered to the defendant at some date before June 1, and in time for use by him at the convention which was to meet on that date. The failure of the seller to deliver the goods by that date amounted to a breach of the contract and authorized its rescission and repudiation by the purchaser. It appears therefore that delivery "at once," in the sense of this contract, meant delivery in time for the use of the goods at the convention on June 1. See *Georgia Agricultural Works* v. *Price,* 11 *Ga. App.* 80 (3), 84 (74 S. E. 718). The evidence demanded a finding for the defendant, and the appellate

division of the civil court of Fulton County erred in affirming the judgment overruling the defendant's motion for new trial.

*Judgment reversed. Sutton, J., concurs.*

FELTON, J., concurring specially. Under the terms of the order acceptance by the jobber meant acceptance by the Diamond Match Company. Therefore the agent had authority to complete the contract by having the jobber accept it. The agent did not deny that the defendant told him he expected the matches before June 1, on account of the convention, but he did deny that he told the defendant the matches would be delivered within three or four weeks. The agent knew what the defendant meant by "at once." I do not think the jobber has a cause of action. She did not pay the debt, and had no assignment.